UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK MCNULTY and
FRANK MAIORANA,

        Plaintiffs,

                              Civil Case No. 15-11947
v.                              Honorable Linda V. Parker

CITY OF DETROIT FINANCE DEPARTMENT,
d/b/a DETROIT FIRE DEPARTMENT,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this lawsuit, filed May 29, 2015, Plaintiffs Patrick McNulty ("McNulty") and Frank Maiorana ("Maiorana") (collectively "Plaintiffs") claim that Defendant City of Detroit Finance Department, doing business as the Detroit Fire Department, engaged in age and race discrimination when a new Chief of Arson was appointed in April 2014. In their Complaint, Plaintiffs assert one count of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and one count of race and age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").[1] Presently before the Court is Defendant's motion for

---

[1] In their Complaint, Plaintiffs allege age discrimination in violation of Title VII; however, they now concede that this is not a viable claim. (*See* ECF No. 17 at Pg ID 290.)

summary judgment, filed pursuant to Federal Rule of Civil Procedure 56 on February 5, 2016.  (ECF No. 15.)  The motion has been fully briefed (ECF No. 17, 19), and the Court held a motion hearing on September 7, 2016.  For the reasons that follow, the Court grants Defendant's motion.

I.     **Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact."  *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To

demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*, 477 U.S. at 255.

## II.   Factual and Procedural Background

In April 2014, Plaintiffs were Captains with the Detroit Fire Department's Arson Division.  They are both Caucasian males.  McNulty, who was born in March 1961, was then fifty-three years old.  (Def.'s Mot., Ex. 8 at 15.)  Maiorana, who was born in February 1959, was fifty-five years old.  (*Id*., Ex. 6 at 74.)

A collective bargaining agreement ("CBA") between the Detroit Fire Department and the union representing its employees historically provided for promotions within the department based on seniority.  (Def.'s Mot., Ex. 3 at 78.) In accordance with that provision, ElDon Parham was serving as the department's Chief of Arson in 2013.  However, when the City of Detroit filed for bankruptcy in

July 2013, Kevyn Orr was appointed Emergency Manager and, pursuant to Section 12 of Public Act 436, had the authority to unilaterally implement changes within the City's departments, including the manner in which promotions were made, regardless of the terms of any CBA.[2] *See* Mich. Comp. Laws § 141.1552(1). Outside consulting firms such as Conway MacKenzie and Jones Day were retained to analyze the operations of the various City departments and advise Orr on ways to improve those departments. (Def.'s Mot., Ex. 3 at 77-78.) Throughout 2013, these consultants held reorganization meetings to address changes within the Fire Department, which usually were attended by Donald Austin and Edsel Jenkins, respectively the Executive Fire Commissioner and Deputy Fire Commissioner at the time. (*Id.*, Ex. 2 at 15-16.) The department's division heads sometimes were invited to participate in these meetings as well. (*Id.*)

McNulty testified during his deposition in this matter that in October 2013, he approached Fire Marshal Robin Eagon and asked why the Fire Department's senior captains were not included in the meetings with the City's consultants. (Def.'s Mot., Ex. 8 at 37-38.) McNulty had learned that Dennis Richardson, a less senior Fire Department employee, had attended meetings. (*Id.* at 37.) According

---

[2] As Plaintiffs point out, while the Emergency Manager had the authority to make changes to CBAs involving City workers, *see* Mich. Comp. Laws § 141.1552, the CBA for Detroit Fire Department employees was not modified to make promotions of certain positions based on appointment rather than seniority until November 6, 2014. This fact would be significant if Plaintiffs were claiming a violation of the CBA, but they are not asserting that claim here.

to McNulty, Eagon said that Richardson had been included because "they wanted young blood and they wanted fresher ideas[.]" (*Id*. at 38.)

One change suggested during the meetings with the City's consultants was to make position decisions based on appointment rather than seniority. (*Id*., Ex. 3 at 76-77.) Austin first raised this as a needed change. (*Id*. at 77-78.) Austin also precipitated the removal of Parham as Chief of Arson. (*Id*. at 75-78.)

In January 2014, Orr appointed Jonathan Jackson to serve as Austin's replacement in the position of interim Executive Fire Commissioner. City of Detroit Mayor Mike Duggan subsequently approached Jackson and asked Jackson if there was a need for a change in who was heading the Fire Department's Arson Section. (*Id*. at 92.) Jackson testified at his deposition that he told the mayor he believed someone else should be appointed Chief of Arson and that he recommended Gary Victor, the retired Chief of Arson. (*Id*.) Victor is Caucasian and in his late sixties. Jackson further testified that he then approached Victor concerning his interest in the position, but Victor declined the role. (*Id*. at 92-93.)

Plaintiffs submit Victor's affidavit in response to Defendant's motion, however, in which Victor states that in early December 2013, Jackson offered him the position of Second Deputy Fire Commissioner, not Chief of Arson. (Pls.' Resp., Ex. 4.) According to Victor, Jackson never discussed or offered him the Chief of Arson position. (*Id.*)

5

In early January 2014, Mayor Duggan and Jackson appeared together on a local television show. (Def.'s Mot., Ex. 3 at 86.) During the show, Jackson expressed his opinion that improvements were needed in the Detroit Fire Department's Arson Section. (*Id*.) The following day, Parham (who still served as Chief of Arson) approached Jackson and expressed his disagreement with Jackson's assessment of the section. (*Id*. at 86-87.) Jackson responded that he disagreed as there was always room for improvement, and he invited anyone in the Arson Section to suggest ways to improve the section. (*Id*. at 87.)

A couple of days later, Charles Simms, a third ranking captain in the Arson Section, approached Jackson and said he heard Jackson was looking for ways to improve the section. (*Id*.) Simms told Jackson he had some suggestions to make. (*Id*.) At a subsequent meeting, Simms made-- according to Jackson-- a "very detailed and elaborate" presentation, which included a PowerPoint, brochure documents, and data, outlining a number of ways the section could be improved. (*Id*. at 87-88.)

Jackson was very impressed with Simms' presentation and arranged for Simms to provide a "brief synopsis" of his ideas to Deputy Fire Commissioner Edsel Jenkins. (*Id*. at 90.) With Simms' permission, Jackson then relayed Simms' suggestions to Mayor Duggan, who asked to meet with Simms. (*Id*.) After his meeting with Simms, Mayor Duggan asked Jackson how he would feel about

6

Simms being appointed the Chief of Arson or heading the Arson Section. (*Id*. at 91.) Jackson told the mayor he had no objection. (*Id*.)

On January 22, 2014, Orr sent a letter to Jackson notifying Jackson of several appointments and reassignments within the Detroit Fire Department. (Def.'s Mot., Ex. 4.) One of the changes was the appointment of Simms as Chief of Arson and Parham's reassignment to Captain. (*Id*.) Service of the Chief of Arson position, along with other appointed positions made by Orr in the same letter, were at the pleasure of the Executive Fire Commissioner. (*Id*.)

Several additional appointments were made in the Detroit Fire Department under Orr's direction. Doug Lyons was appointed Senior Chief and then Deputy Chief. (*Id*., Ex. 3 at 139.) Lyons is Caucasian and in his late fifties. (*Id*.) Craig Dougherty was appointed Second Deputy Commissioner. (*Id*.) Dougherty is Caucasian and was fifty-eight or fifty-nine when the appointment was made. (*Id*. at 139-40.) James Provost was reappointed Deputy Chief in the Firefighting Division. (*Id*. at 140.) Provost also is Caucasian and in his late fifties. (*Id*. at 141.)

Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC"), claiming race and age discrimination in connection with Simms' appointment as Chief of Arson. The EEOC issued Dismissals and Notices of Rights to Sue to Plaintiffs on April 22, 2015. As indicated, Plaintiffs filed this

7

lawsuit on May 29, 2015. In the meantime, on April 29, 2014, Maiorana retired from the Detroit Fire Department, feeling "devastated" and that he had no other option after being passed over for the Chief of Arson position. (Def.'s Mot., Ex. 6 at 18-19, 27.) McNulty remained with the Detroit Fire Department and was appointed to the Chief of Arson position effective March 3, 2016. (Def.'s Reply, Ex. 3.)

### III. Applicable Law and Analysis

As indicated, Plaintiffs allege that Defendant's selection of Simms as Chief of Arson in 2014 constituted race discrimination in violation of Title VII and ELCRA and age discrimination in violation of ELCRA.

An employee may establish a claim of discrimination under Title VII and ELCRA by offering either direct or circumstantial evidence of discrimination. *White v. Columbus Metro. Hous. Auth.*, 424 F.3d 232, 238 (6th Cir. 2005) (Title VII); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003) (ELCRA). Plaintiffs do not appear to take the position that they have direct evidence to show that Defendant discriminated against them because of their race or age.

The burden-shifting framework set forth by the Supreme Court in *McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is applicable when a plaintiff must prove his case through circumstantial evidence. The plaintiff begins by

establishing a prima facie case of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981)). To make this showing, the plaintiff generally must establish the following: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citations omitted). Some of these prongs are modified for age and reverse race discrimination claims.

For purposes of an age discrimination claim, "the protected class includes workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). In a reverse discrimination case, the first and fourth prongs are modified because the plaintiff must "demonstrate[e] that he was intentionally discriminated against 'despite his majority status.' " *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir. 1985) (quoting *Lanphear v. Prokop*, 703 F.2d 1311, 1315 (D.C. Cir. 1983)).

The first prong, as modified in a reverse discrimination case, requires the plaintiff to demonstrate " 'background circumstances to support the suspicion that

9

the defendant is that unusual employer who discriminates against the majority.' " *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (brackets omitted) (quoting *Murray*, 770 F.2d at 67). The plaintiff can satisfy this requirement by showing the defendant's "unlawful consideration of race as a factor in hiring in the past[,]" which the Sixth Circuit has found "justifies a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Id.* at 256 (quoting *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1018 (D.C. Cir. 1981)) (additional quotation marks and citation omitted). The plaintiff also can show "background circumstances" by establishing that he was "a Caucasian employee in a workplace predominantly staffed and managed by African-Americans." *Weberg v. Franks*, 229 F.3d 514, 523 n.9 (6th Cir. 2000). The fourth prong of the plaintiff's prima facie case, as modified in a reverse discrimination claim, requires the plaintiff to demonstrate he "was treated differently than similarly situated employees of a different race." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 837 (6th Cir. 2012).

If the plaintiff sets forth a prima facie case, an inference or rebuttable presumption of discrimination arises. *DiCarlo*, 358 F.3d at 414.

In order to rebut this inference, the employer must "articulate some legitimate, non-discriminatory reason" for its conduct. *Id.* If the employer has met this burden, the plaintiff then must "prove by a preponderance of the evidence that

the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.' " *Id.* at 414-15 (quoting *Burdine*, 450 U.S. at 253).

Defendant first argues that Plaintiffs cannot establish a prima facie case of age or race discrimination because they cannot prove they were subjected to an adverse employment action. As Defendant explains, if promotions had continued to be made based on seniority, neither McNulty nor Maiorana would have been promoted to the position because Parham, the most senior member of the Arson Section, would have remained in the position. Defendant clarified its argument at the motion hearing, contending that this is not a failure to promote case because Plaintiffs had no expectation of ascending to the Chief of Arson position where discretion to make the appointment now was left in the sole discretion of the Executive Fire Commissioner.

Regardless of how the appointment was made, this Court believes this still is a failure to promote case. Plaintiffs are claiming that the appointment of Simms and failure to promote Plaintiffs violated Title VII and ELCRA because unlawful criteria (i.e., Plaintiffs' race and age) were used in the promotion decision. The Supreme Court and Sixth Circuit have held that the failure to promote is an adverse employment action. *See White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment

11

status, such as hiring, firing, *failing to promote*, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.")).

Defendant alternatively argues that Plaintiffs cannot establish a prima facie claim of age discrimination because they cannot show they were replaced by a "significantly younger person." According to Defendant, Simms was forty-eight years old at the time of his appointment to the Chief of Arson position. Thus, Simms is five years younger than McNulty and seven years younger than Maiorana.

Defendant does not cite any Michigan decision, and this Court could not find a case in its own research, defining "significantly younger" for purposes of an ELCRA age discrimination claim. Nevertheless, Michigan courts consider federal law when reviewing claims of age discrimination based on state law. *See, e.g., Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 589-90 (Mich. 1986); *Featherly v. Teledyne Indus., Inc.*, 486 N.W.2d 361, 364 (Mich. Ct. App. 1992) (citing cases). As Defendant points out, most federal Circuits hold that age differences of less than ten years are not significant enough to satisfy the fourth prong of an age discrimination prima facie case. *Grosjean*, 349 F.3d at 338 (citing cases). In *Grosjean*, however, the Sixth Circuit adopted six years or less as the bright-line where the age difference between the plaintiff and his or her replacement is not

12

significant enough to make out the fourth prong of the plaintiff's prima facie case. *Id.* at 340.

It is not evident to this Court whether the Michigan courts would adopt the Sixth Circuit's six-year bright-line rule or the ten-year rule adopted by the majority of Circuits. Nevertheless, under either cut-off, the age difference between McNulty and Simms is not significant enough to enable McNulty to establish a prima facie case of age discrimination. The Court finds it unnecessary to decide which cut-off to follow in evaluating Maiorana's prima facie case because-- as discussed below-- even if he establishes a prima facie case, his age discrimination claim fails.

Defendant contends that Plaintiffs cannot demonstrate a prima facie case of race discrimination because they cannot establish that the Detroit Fire Department is the "unusual employer that discriminates against the majority." Plaintiffs respond to this argument, stating: "Plaintiffs were definitely in the minority within the predominantly African American Detroit Fire Department, and all of the decision makers in this matter were African American." (Pl.'s Resp. Br. at Pg ID 288.) Plaintiffs offer no evidence to support this assertion, however.

Plaintiffs also contend in response that "Jackson has exhibited a propensity for passing up Caucasian candidates in favor of promoting African American individuals . . .." (*Id.* at Pg ID 293.) Plaintiffs, however, identify only one other

13

instance where they believe Jackson wrongfully appointed an African American employee over a Caucasian employee. (*Id*.) This single incident does not support "a suspicion that incidents of capricious discrimination against whites because of their race may be likely." *Zambetti, supra*. It also ignores Defendant's evidence that in the same time-frame as Simms' appointment, several Caucasian employees were appointed to high-ranking positions within the Detroit Fire Department. For these reasons, the Court finds that Plaintiffs fail to present evidence to demonstrate a prima facie case of race discrimination.

Nevertheless, even if Plaintiffs prevailed in establishing a prima facie case of age or race discrimination, Defendant argues that it had a legitimate, non-discriminatory reason for promoting Simms and that Plaintiffs cannot establish that this reason was a pretext for discrimination.

As Defendant explains, Orr was granted the authority to unilaterally implement changes within the City of Detroit's departments and the Detroit Fire Department was one department where many changes were made. One change was with how promotions were facilitated for certain division head positions, in that seniority no longer was the basis for deciding who to promote and the positions became appointed positions to be served at the pleasure of the Executive Fire Commissioner. Another change was the removal of Parham as Chief of

Arson, who the Executive Fire Commissioner at the time, Austin, believed was not capable of handling the position's responsibilities.

Orr selected Simms to replace Parham after Simms came forward and made an "elaborate" and "very impressive" presentation suggesting ways to improve the Arson Section. Simms had met with and presented his ideas to Mayor Duggan who, after the meeting, asked Jackson how he would feel about Simms being appointed to the Chief of Arson position. Plaintiffs fail to demonstrate that this explanation for Simms' selection was a pretext for age or race discrimination.

Plaintiffs contend that they had more experience, training, and seniority than Simms. Orr, however, was not required to select the most experienced, well-trained, or senior individual to fill City of Detroit positions.[3] Plaintiffs also attempt to demonstrate pretext by presenting evidence refuting Defendant's claim that

---

[3] In its recitation of the facts, Defendant does include an excerpt from Jackson's deposition testimony, where Jackson relates that during the reorganization meetings, Austin expressed that positions should be changed to appointed positions because it was important in high-level, critical positions to have a person capable of handling the responsibility. (Def.'s Br. in Supp. of Mot. at Pg ID 70, citing Ex. 3 at 78-79.) According to Jenkins, Austin was a proponent of a merit based promotion system that would include considering an individual's education, training, evaluations, and seniority. (*Id.*, citing Ex. 2 at 17-20.) As Plaintiffs point out, the evidence reflects that Jackson never investigated Simms' experience and qualifications before suggesting that Simms present his ideas to Mayor Duggan or before Simms was promoted to the Chief of Arson position. (Pl.'s Resp., Ex. 3 at 117.) Nevertheless, Defendant does not claim that Orr selected Simms based on the criteria identified by Austin. For that reason, the failure to investigate Simms' qualifications and/or experience does not demonstrate that Defendant's legitimate reason for promoting him was a pretext for discrimination.

Jackson first offered the Chief of Arson position to Gery Victor, a sixty-six year old Caucasian who declined the offer. (*See* Def.'s Mot., Ex. 3 at 92-93; Pl.'s Resp., Ex. 4 ¶ 6.) According to Victor, the position he actually was offered was the Second Deputy Chief position. (Pl.'s Resp. Ex. 4 ¶¶ 4-5.) This evidence does not demonstrate that the stated reasons for choosing Simms were false, however. If anything, this evidence of an older Caucasian being offered a high-level position within the Detroit Fire Department undermines Plaintiffs' claim of age and race discrimination within the department.

    Plaintiffs rely on two statements to suggest that Defendant's stated reason for choosing Simms was not the real reason for his promotion and that race and/or age was the true reason. The first statement, according to Maiorana, was made at a retirement party for Hester Wheeler, an African American colleague in the fire department.[4] (Pl.'s Mot., Ex. 1 at 108.) Maiorana testified that Wheeler gave a speech during the party, where he told the attendees (all of whom were African American besides Maiorana) that it is their responsibility upon their retirement to fill their positions with . . ." and then Wheeler gestured to his skin, which Maiorana

---

[4] The Court notes that there is no indication in the record of when this retirement party occurred in relation to Simms' appointment as the Chief of Arson.

16

interpreted to mean African Americans. (*Id.*) Maiorana testified that the other attendees then stood up and cheered.[5] (*Id.* at 108-09.)

The second statement on which Plaintiffs rely is Eagon's purported statement to McNulty that Plaintiffs were not included in the reorganization meetings in 2013 because "they wanted young blood[.]" (Def.'s Mot., Ex. 8 at 37-38.) There is no evidence identifying who Eagon meant when he said "they," however. According to Jackson, these meetings were attended by some department representatives, but also the city's outside consultants. (*Id.*, Ex. 3 at 64.)

The Sixth Circuit has held that "[u]nless the statements or conduct of nondecision makers can be imputed to the ultimate decisionmaker, such statements or conduct can not suffice to satisfy the plaintiff's burden of demonstrating animus." *Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 724 (6th Cir. 2004) (internal quotations marks and citations omitted). The Sixth Circuit has further instructed that " '[a]n isolated discriminatory remark made by one with no managerial authority over the challenged personnel decisions is not considered indicative of … discrimination.' " *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) (quoting *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1161

---

[5] Particularly because there is no evidence that Wheeler ever made employment decisions within the Detroit Fire Department, this evidence also does not show that Defendant is that "unusual employer who discriminates against the majority."

(6th Cir. 1990) ("[S]tatement by an intermediate level management official is not indicative of discrimination when the ultimate decision to discharge is made by an upper level official.")). Because there is no evidence as to who expressed a preference for "young blood" and no evidence that Wheeler was involved in the decision to promote Simms or influenced that decision, Plaintiffs' evidence does not suggest a discriminatory basis for the decision.

In short, Defendant presents a legitimate, non-discriminatory reason for the selection of Simms as Chief of Arson over Plaintiffs. Plaintiffs fail to demonstrate that Defendant's reason was a pretext and that the real reason for the decision was race or age discrimination.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: September 21, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 21, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury  
Case Manager